**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |  |
|---|---|
| **JUDICIAL WATCH, INC.**, Plaintiff, v. **CENTRAL INTELLIGENCE AGENCY**, Defendant. | Case No. 17-cv-00414 (CRC) |

**MEMORANDUM OPINION**

In this Freedom of Information Act case, Plaintiff Judicial Watch, Inc. requested a specific document from the Central Intelligence Agency: an unclassified version of an assessment of Russian interference in elections across Europe that was purportedly read by Representative Mike Turner and later referenced in a December 2016 *Wall Street Journal* article. Because the CIA properly asserted a *Glomar* response under FOIA Exemptions 1 and 3, and because Judicial Watch has failed to overcome that response by proving that the Agency publicly acknowledged the existence of the document, the Court will grant the CIA's motion for summary judgment and deny Judicial Watch's cross-motion.

**I.  Background**

On December 13, 2016, the *Wall Street Journal* published an article entitled "GOP Congressman Demands White House Release Report on Russian Meddling in Elections." Def.'s Mot. Summ. J. Ex. A. The article reported that "[s]ince last year, [Representative Mike] Turner, a member of the House Intelligence Committee, has been pushing for the unclassified version of a report assessing Moscow's interference in foreign elections, particularly across Europe." Id. The article went on to state that "[t]he White House already released a classified version of the

assessment but Mr. Turner has been pushing for the unclassified version, which would be releasable to the public." Id.

The next day, Judicial Watch, Inc. submitted a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 to the CIA seeking "the unclassified assessment or report identified in the *Wall Street Journal* article." On May 24, 2017, the CIA issued a *Glomar* response, refusing to confirm or deny that it had the requested record pursuant to FOIA Exemptions 1 and 3. Subsequently, on July 19, 2017, the CIA moved for summary judgment, and Judicial Watch filed a cross-motion for summary judgment.

## II. Legal Standard

FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (citation omitted). There are nine exemptions from FOIA's general policy of disclosure that seek to balance governmental and privacy interests. See 5 U.S.C. § 552(b). These exemptions are to be narrowly construed, and the agency has the burden of justifying any withholding it makes. DiBacco, 795 F.3d at 183–84.

Courts have recognized that in "certain cases, merely acknowledging the existence of" records responsive to a FOIA request "would itself 'cause harm cognizable under [a] FOIA exception.'" People for the Ethical Treatment of Animals v. NIH ("PETA"), 745 F.3d 535, 540 (D.C. Cir. 2014) (citation omitted). In these situations, an agency may issue what is known as a "*Glomar* response," refusing to confirm or deny the existence of any responsive records.[1] Id. A

---

[1] This name is derived from the CIA's refusal to confirm or deny records related to the *Hughes Glomar Explorer*, a ship used in a classified CIA project to raise a sunken Soviet submarine for U.S. intelligence analysis. PETA, 745 F.3d at 540.

2

*Glomar* response is appropriate "if the fact of the existence or nonexistence of agency records falls within a FOIA exception." Id. (citation omitted). The Court can rely on agency affidavits in evaluating a *Glomar* response. Id.

An agency may not issue a *Glomar* response, however, if it has already publicly acknowledged the existence of the records sought. American Civil Liberties Union v. CIA ("ACLU"), 710 F.3d 422, 427 (D.C. Cir. 2013). A plaintiff bears the burden of proving such public acknowledgment by showing: (1) "the information requested must be as specific as the information previously released"; (2) "the information requested must match the information previously disclosed"; and (3) "the information requested must have already been made public through an official and documented disclosure." Wolf v. CIA, 473 F.3d 370, 378 (D.C. Cir. 2007) (quoting Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990)). In the context of a *Glomar* response, the relevant agency acknowledgment is that the record exists, not that the record contains certain content. See, e.g., ACLU, 710 F.3d at 427. Thus, a plaintiff seeking to prove public acknowledgment "must pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency." Moore v. CIA, 666 F.3d 1330, 1333 (D.C. Cir. 2011).

FOIA cases are typically resolved on summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriately granted if

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**III. Analysis**

A. <u>Public Acknowledgment</u>

Judicial Watch challenges the CIA's *Glomar* response by arguing that the Agency has already publicly acknowledged the existence of the requested document in two ways: (1) in a January 6, 2017 report issued by the Office of the Director of National Intelligence about Russian activities in recent U.S. elections; and (2) through the existence of a statute that requires the Director of National Intelligence to submit an "intelligence community assessment on the funding of political parties and nongovernmental organizations in former Soviet States and countries in Europe by the Russian Security Services since January 1, 2006." <u>See</u> Pub. L. No. 114-113, § 502, 129 Stat. 2924 (2015); Pl.'s Cross Mot. Summ. J. at 5. Neither, however, amounts to a public acknowledgment that "matches the plaintiff's request." <u>Moore</u>, 666 F.3d at 1333.

   *1. The January 6, 2017 Report*

In January 2017, the Office of the Director of National Intelligence published a report entitled "Assessing Russian Activities and Intentions in Recent U.S. Elections" (the "2017 Assessment"). The 2017 Assessment was "drafted and coordinated" by the CIA, the Federal Bureau of Investigation and the National Security Agency.[2] It found that Russia's activity in the 2016 U.S. Presidential election was "the new normal" because Russia had also "sought to influence elections across Europe." Plaintiff argues that this conclusion proves that the CIA

---

[2] <u>See</u> https://www.dni.gov/files/documents/ICA_2017_01.pdf.

"conducted (or at least participated in) some type of assessment" regarding Russia's attempt to influence European elections. Pl.'s Cross Mot. Summ. J. at 4. This inference is both unsupported and inapposite.

First, the 2017 Assessment was based on information compiled from three intelligence agencies, so it does not definitively prove that the CIA was the agency responsible for the particular conclusion about Russia's influence on European elections. But even if the 2017 Assessment did prove that the CIA was responsible for that information, it still does not amount to a public acknowledgment that can overcome a *Glomar* response. This is because Plaintiff requested a *specific document*: "a copy of the unclassified assessment or report identified in the *Wall Street Journal* article." December 14, 2017 FOIA request. And nowhere does the 2017 Assessment acknowledge the existence of a CIA report assessing Moscow's interference in foreign elections. The only person alleged to have acknowledged the existence of that report is Congressman Mike Turner when he spoke to the *Wall Street Journal*. Needless to say, this does not constitute a public acknowledgment *by the Agency*.

This case is unlike ACLU, where the plaintiffs sought *all* records pertaining to the use of drones by the CIA and the U.S. military. 710 F.3d at 431. There, the Court found that it was "implausible that the CIA does not possess a single document on the subject of drone strikes" given the President, CIA-director, and other administration officials' ample comments on the subject. Id. at 429–31. But here Judicial Watch has not requested all documents related to a particular topic; rather, it has requested *one, particular* document. And the 2017 Assessment's brief reference to Russia's interference in European elections is not "an agency record" that acknowledges the existence of that particular document.

*2. The Statute*

Judicial Watch next points to a statute that requires the Director of National Intelligence to submit an assessment by the intelligence community to relevant congressional committees regarding the Russian Secret Service's funding of political parties and nongovernmental organizations in former Soviet states and countries since 2006 (the "June 2016 Report"). Pub. L. No. 114-113, § 502 129 Stat. 2924 (2015). The statute requires that the report be submitted in unclassified form and imposes a June 2016 deadline. Id. However, like the 2017 Assessment, the statute's requirement that the June 2016 Report be submitted to Congress cannot serve as an official acknowledgment of the specific document Plaintiff requested.

First, like the 2017 Assessment, the June 2016 Report was compiled by the "intelligence community" rather than the CIA specifically. So its existence does not prove that the CIA in particular had any information relevant to Russian interference in European elections. In fact, because the June 2016 Report was submitted to Congress and not released publicly, it is unclear whether it contains *any* information about Russian interference in European elections. And it certainly does not prove that the CIA has the specific report assessing Russia's interference in foreign elections referenced in the 2016 *Wall Street Journal* article. Judicial Watch offers no evidence that the June 2016 Report acknowledges the existence of the specific document requested.

In short, while it may be that the CIA does in fact have the report referenced in the *Wall Street Journal* article, the Court's inference that a record exists cannot stand in for a Plaintiff's showing of an official acknowledgement. James Madison Project v. DOJ, 2018 WL 294530, at *12 (D.D.C. Jan. 4, 2018) (the public acknowledgement standard is not an "agency must have it" standard.) Participating in intelligence community–wide assessments about related topics does

6

not amount to a public acknowledgment that the CIA has a specific document. Plaintiff has therefore failed to overcome Defendant's *Glomar* response by proving that the agency publicly acknowledged the existence of the record sought.

B. Exemptions

Plaintiff rests its challenge to Defendant's *Glomar* response solely on the public acknowledgment doctrine, and does not contest the CIA's invocation of FOIA Exemptions 1 and 3 as supporting the *Glomar* response. Nevertheless, the Court holds that the CIA has properly invoked both exemptions.

1. *Exemption 1*

FOIA Exemption 1 prevents disclosure of classified information. 5 U.S.C. § 552(b)(1). Specifically, an agency may refuse to produce materials that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." Id. In the context of a *Glomar* response, Defendant must show that the fact of the existence or nonexistence of the requested document (and not just the document itself) falls within the exemption. PETA, 745 F.3d at 540.

To support its *Glomar* response, Defendant submitted an affidavit from Antoinette Shiner, an Information Review Officer for the CIA who is responsible for the classification review of CIA documents at the Top Secret level. Shiner Decl. ¶¶ 1-3. Shiner details how, if the CIA were to confirm the existence of the assessment referenced in the *Wall Street Journal* article, such confirmation would "show that the Agency determined that a study of Russia's interference in foreign elections in the 2015-timeframe was of significant intelligence value." Id. ¶ 13. Shiner further stated in her declaration that the existence or nonexistence of this

information "is currently and properly classified" under Executive Order 13526, and that its disclosure "could reasonably be expected to cause damage to national security because such an admission would reveal broader intelligence priorities of the Agency and sensitive details about the CIA's intelligence methods and activities." Id. ¶¶ 10–14. Without any objection from Plaintiff, Defendant has met its burden of proving the applicability of Exemption 1. See PETA, 745 F.3d at 540.

    *2. Exemption 3*

FOIA Exemption 3 applies to records that another statute exempts from disclosure. 5 U.S.C. § 552(b)(3). Here, the CIA invokes the National Security Act of 1947, which requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Records classified pursuant to this statute paradigmatically fall within the scope of Exemption 3. See Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009) (citing Fitzgibbon, 911 F.2d at 761). Shiner's declaration explains that acknowledging the existence or nonexistence of records responsive to Plaintiff's FOIA request would "reveal intelligence sources and methods, which the National Security Act is designed to protect." Shiner Decl. ¶ 17. Again, without any objection from Plaintiff, Defendant has met its burden of proving the applicability of Exemption 3.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment. A separate Order shall accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: February 7, 2018